LAMBERTUS C. BOBBINK ET AL., PLAINTIFFS IN ERROR, v. ERIE RAILROAD COMPANY ET AL., DEFENDANTS IN ERROR.

Argued December 9, 1907—Decided March 2, 1908.

Where the evidence only discloses that, in crossing a frog or device used to permit the tracks of one railroad to cross those of another, the foot of plaintiffs' horse was caught in the appliance, thrown and injured, and the only ground of negligence attributable to defendants is the use of a crossing frog of a standard pattern which is in general use in the United States by like companies for a similar purpose, no legal liability of the defendants is shown, and the case was properly disposed of by the trial judge in directing judgment of nonsuit.

On error to the Supreme Court.

For the plaintiffs in error, *George P. Rust* and *Arthur S. Corbin.*

For the defendant in error Erie Railroad Company, *Collins & Corbin*.

For the defendant in error Jersey City, Hoboken and Paterson Street Railroad Company, *William B. Gourley*.

The opinion of the court was delivered by

BERGEN, J.   The horse of the plaintiffs' caught its foot in a device used by the defendants on Passaic street, in the city of Passaic, where the tracks of the defendants crossed each other, which resulted in throwing the animal and seriously injuring it.   This suit was instituted to recover damages for such injury, and at the close of plaintiffs' case a judgment of nonsuit was entered by direction of the court, to reverse which this writ of error is prosecuted.

The plaintiffs' driver testified that when crossing the tracks at Passaic street, "I had to swing around in the trolley track to the right to avoid other trucks coming east and going west, and my nigh side forefoot caught in the slot of the trolley and the Erie track and threw him."   This was the only description given of the accident, and manifestly the occurrence as described does not raise a presumption of negligence on the part of the defendants, and the case would fall, if there was no other proof, under the rule laid down in *Bahr v. Lombard, Ayres & Co.*, 24 *Vroom* 233.   But the plaintiffs undertook to avoid this fatal infirmity in their case by attempting to show that the device was a negligent construction, obviously defective and dangerous, and its use at the place in question an act of negligence by the defendants.   The only testimony on this branch of the case was given by an expert called by the plaintiffs, who testified as follows:

"*Q.* Don't you know that this is a recognized standard device, and adopted by the steam railroads and street railroads of the United States?

"*A.* I know that there has been a device; yes, sir.

"*Q.* And that it is adopted at this particular crossing?

"*A.* The measurements are quite similar.

"*Q.* And that it is the standard for all railway crossings of the United States?

"*A.* I cannot answer positively; I presume it is."

It thus appears from plaintiffs' witness that the frog used by the defendants was of a standard pattern in general use for the purpose to which it was applied by the defendants, and they were therefore guilty of no breach of duty in using it. *Piver* v. *Pennsylvania Railroad Co.,* 45 *Vroom* 619.

A witness called by the plaintiffs, having testified that he could plainly see the Passaic street crossing from his place of business, and that he had observed horses traveling over the frog or device complained of, was asked what he had "observed with reference to horses on this crossing." Objection to the question being interposed and sustained, an exception was sealed and error assigned. The question was objectionable because of its generality, but, assuming that it was intended to call for the observation by the witness of similar occurrences, it was properly overruled. The fact that other horses had caught their feet in the frog would not, standing alone, justify the conclusion that the frog was improperly constructed. The admission of such evidence would require the examination and determination, in each case the witness might testify to, of the degree of care exercised by those in charge of the horses injured. Testimony of this character would lead to the trial of issues distinct from those under consideration, and was condemned by Chief Justice Depue in *Temperance Hall Association of Trenton* v. *Giles,* 4 *Vroom* 260.

The last ground of error is that the court overruled evidence tending to show that a change could be made in this device without interfering with its usefulness to the defendants, and at the same time make it safer than at present for horses traveling over it. The question was properly overruled, for the witness had testified that the device was substantially the same that had been generally adopted for railroad crossings in the United States. The witness might have known of a device which was better, but the defendants are not bound to abandon an appliance or apparatus which had

received general approval every time a person comes with one which he thinks, or is supposed to be, better. *Hoff* v. *West Jersey Railroad Co.*, 16 *Vroom* 201.

The judgment of nonsuit was properly ordered, and the judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, BOGERT, VROOM, GREEN, GRAY, DILL, J.J.   13.

*For reversal*—None.